IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GERMAINE GREENE, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 11-109 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE LONGLEY, | ) | |
| Respondent. | ) | |

# OPINION AND ORDER[1]

Presently before the Court is Germaine Greene's petition for a writ of habeas corpus [ECF No. 4], which he filed pursuant to 28 U.S.C. § 2241. He challenges the length of his placement in a Residential Re-Entry Center ("RRC"). Specifically, he contends that by concluding that he will receive only 30 days of placement in an RRC, the Bureau of Prisons ("BOP") has abused its discretion under 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007 (the "SCA"), PL 110-199 (effective on April 9, 2008). He also contends that the RRC placement determination was made in violation of 42 U.S.C. § 17541.

## I.

**A.     Relevant Statutory/Regulatory/Policy Background**

Three statutes are relevant to this case: 18 U.S.C. § 3621(b); 18 U.S.C. § 3624(c); and 42 U.S.C. § 17541. The BOP has the authority to designate the places at which an inmate shall serve his sentence pursuant to 18 U.S.C. § 3621(b). In making its designation decision, the statute requires that the BOP consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense;

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

(3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and, (5) any pertinent policy statement by the Sentencing Commission. 18 U.S.C. § 3621(b)(1)-(5).

Section 3624(c) of 18 U.S.C. describes the BOP's obligation to prepare inmates for community reentry by, *inter alia*, designating them to an RRC (formerly known as halfway houses) at the end of the term of imprisonment. Prior to April 9, 2008, that statute capped RRC placement for pre-release purposes to a maximum of six months. The SCA amended § 3624 to allow for a maximum of twelve months of pre-release RRC placement. It now reads, in relevant part:

> (c) Prelease custody. --
>
> (1) In general. -- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the re-entry of that prisoner into the community. Such conditions **may** include a community corrections facility.
> - - -
> (4) No limitations. -- **Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.**

18 U.S.C. § 3624(c)(1) & (4) (as amended by the SCA) (emphasis added).

Section 3624(c) has always provided the BOP with the discretion to determine whether and how long an inmate is to be pre-released to an RRC. The BOP retains this discretion under the SCA, provided such pre-release confinement is practicable and the BOP considers § 3621(b)'s factors. The SCA does not mandate a particular method or procedure that the BOP must follow when making RRC referrals, as long as the criteria set forth at § 3621(b) are considered.

2

The BOP issued Program Statement ("P.S.") 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, on December 16, 1998, in order to provide guidelines to staff regarding the effective use of RRCs and how to make pre-release custody decisions. It advises, in relevant part, that:

> Inmates in the following categories shall not ordinarily participate in [RRC] programs:
>
> a. Inmates who are assigned a "Sex Offender" Public Safety Factor.
> ---
> f. Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement;
> - - -
> i. Inmates who pose a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community.

P.S. 7310.04 at 10-11.

Section 17541 of 42 U.S.C., also created by the SCA, provides, *inter alia*, that "[the] Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:"

> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons—
> - - -
> (G) provide incentives for prisoner participation in skills development programs.
>
> (2) Incentives for a prisoner who participates in reentry and skills development programs **which may, at the discretion of the Director, include**–
>
> **(A) the maximum allowable period in a community confinement facility**; and
> (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

(Emphasis added).

On October 21, 2008, the BOP issued revisions to subpart B of 28 C.F.R. part 570 as an interim final rule in order to conform its regulations with the requirements of the SCA. The rules provide that

3

"[i]nmates **may** be designated to community confinement [RRCs] as a condition of pre-release custody and programming during the final months of the inmate's imprisonment, not to exceed twelve months[,]" 28 C.F.R. § 570.21 (emphasis added), and that such consideration will be "consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." Id. § 570.22.

In addition, since the enactment of the SCA, the BOP has disseminated a series of guidance memorandum to provide staff with revised policies and instructions regarding RRC placements, and which supplements that which is contained in P.S. 7310.04 (which was issued prior to the SCA). At the present time, and at the time the decisions at issue in this case where made, the applicable guidance memorandum is the one issued on June 24, 2010. (Resp's Ex. 1h, ECF 10-1 at 35-45). The Guidance Memorandum advises that the primary goal of RRC placement is to reduce recidivism. It explains that RRC resources are limited and must focus on those inmates most likely to benefit from RRCs in terms of anticipated recidivism reduction. It states: "Our strategy is to focus on inmates who are at higher risk of recidivating and who have established a record of programming during incarceration, so that prerelease RRC placement will be as productive and successful as possible." (Id. at 36).

The Guidance Memorandum also instructs that RRC placement determinations are to be made on an individualized basis using the criteria set forth at 18 U.S.C. § 3621(b). (Id. at 37). It discontinues an earlier requirement that placements of six months or over be approved by the Regional Director. (Id.) The Guidance Memorandum instructs:

> RRC placement, in and of itself, is not a reward for good institutional behavior, nor is it an early release program or a substitute for the furlough program. RRC placement and length of placement decisions cannot be reduced solely to a classification score or any other type of arbitrary categorization. While staff assessment and analysis of tools such as the Custody Classification Form (BP-338) and the Inmate Skills Development (ISD)

4

> Plan are helpful in establishing broad-based groupings, staff must continue to exercise their professional judgment when making individual inmate RRC placement decisions and be prepared to justify those decisions.

(Id. at 39). It then sets forth guidelines to determine the length of RRC placement. (Id. at 39-41). It concludes by noting that longer RRC placements should be considered for inmates who have "[d]emonstrated successful participation in or completion of programming opportunities[.]" (ECF No. 10-1 at 41).

This is the statutory, regulatory, and policy schemes under which the BOP made the RRC placement decisions at issue in this case.

**B.   Relevant Factual Background**

On June 25, 2007, Greene was sentenced in the U.S. District Court for the Central District of California to 78 months of imprisonment, with a five year term of supervised release to follow, for Transportation of a Minor with Intent That the Minor Engage in Prostitution, in violation of 18 U.S.C. § 2423(A). His current projected release date is October 19, 2011, assuming he receives all good conduct time available. He is scheduled to be transferred to an RRC on September 20, 2011.

On or around January 26, 2011, Greene's Unit Team at FCI McKean reviewed him for RRC placement. (Resp's Ex. 2d, ECF No. 10-2 at 20-22). There is no evidence that this review was not conducted in accordance with the BOP's regulations and policies, which instruct that each inmate be individually assessed under the five factors set forth at 18 U.S.C. § 3621(b). See 28 C.F.R. § 570.22. (See also Resp's Ex. 2, ECF No. 10-2 at 1-9, 6/28/11 Decl. of Derrick Mebane, ¶¶ 6, 13; Resp's Ex. 1h, ECF No. 10-1 at 35-41). Greene was advised that because he was assigned a "sex offender" public safety factor, had unresolved pending charges or detainers, and, "pose[d] a significant threat to the

5

community," he was deemed to be inappropriate for RRC placement. (Resp's Ex. 2d, ECF No. 10-2 at 21). In the "Comment" section, it was explained:

> Inmate Greene was convicted of Transportation of a Minor With Intent to Engage Minor in Prostitution. Inmate Green was responsible for transporting a 14 year old female from New York to California for the purpose of engaging her in prostitution.
>
> Additionally, inmate Greene has outstanding warrants in California and Florida. These warrants involve prostitution charges as well. Both States have indicated they will not extradite inmate Greene, but the charges remain active.
>
> Finally, inmate Greene has received two institution misconduct reports within the past year. On August 11, 2010, he was found guilty of Possession of a Hazardous Tool, code 108, and Assaulting Without Serious Injury, code 224. He was found to be in possession of a cell phone and when confronted by the officer, inmate Greene ran into the officer in an attempt to avoid apprehension. On December 1, 2010, inmate Greene was found guilty of Phone Abuse, Non-Criminal, code 297. While on telephone restriction, inmate Greene used another inmate's PAC number to gain access to the telephone system.

(Id. at 22). The Acting Warden at the time, Scott Finley, approved the Unit Team's recommendation. (Id.)

Sometime not long thereafter, the outstanding charges in California and Florida were dismissed and Greene was reconsidered for RRC placement. An RRC Re-Consideration form dated April 11, 2011, indicated that all pertinent criteria under § 3621(b) had been reviewed and he would receive an RRC placement of 30 days. (Resp's Ex. 2e, ECF No. 10-2 at 23-25). In the "Comments" section, it was written: "Per Warden – See attached email from [Assistant Case Management Coordinator, Ann Miller]." (Id. at 24). The attachment shows that on that same date, Miller had sent the Warden, Archie Longley, an email in which she wrote:

> What is your opinion on this? The inmate is badgering for RRC placement. While Scott Finley was acting warden he signed an exclusion memo based upon the following: [Greene] had pending charges in Florida (which have since been cleared up), in the last year he has had a 297 phone abuse, 108 possession of a cell phone at [FCI] Dix, and 224 Assault (he assaulted the officer when the officer found the cell phone). Additionally, his current offense involved him transporting a 14 [year old] girl from Maryland to California and [he] posted nude pictures of her on the internet to advertise the prostitution

6

service. He had a prostitution charge in '04 also. I agree with the exclusion based upon the discipline information and the sex offense involving a minor.

Warden Longley responded: "Go with 30 days." (Id.)

On April 20, 2011, after his attempts at informal resolution were unsuccessful (see Pet's Ex. A, ECF No. 4-1 at 1), Greene filed an Inmate Request in which he challenged the 30-day RRC placement decision. He also asserted that he should have been "considered separately for an award incentive for my participation in the BOP's skills development program, which is required by 42 U.S.C. § 17541." (Resp's Ex. 1b, ECF No. 10-1 at 9). Warden Longley denied his request on May 9, 2011. (Id. at 10).

On June 9, 2011, the Regional Director denied Greene's appeal of the Warden's decision. He set forth the criteria used to determine RRC placement, and then explained:

> Your Unit Team considered your individual situation, programming and transitional needs pursuant to the above criteria. Although initially denied RRC recommendation, your case was reconsidered when you were able to clear up outstanding charges in Florida. Based on an RRC reconsideration conducted on April 11, 2011, you were recommended for a 30-day RRC placement. You have been accepted for placement at Community First Services on September 20, 2011. This period was determined to be sufficient to provide you the greatest likelihood of successful reintegration into the community. Staff are afforded broad discretion in reaching this decision and you present no evidence this discretion was abused. Accordingly, your appeal is denied.

(Id. at 12).[2]

In the meantime, in May of 2011, Greene filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2241. This Court may only extend the writ to him if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Greene contends that the BOP has abused its discretion under 18 U.S.C. § 3624(c) by determining that he shall receive only 30 days of RRC placement. He also contends that the RRC

---

[2] It does not appear from the record before the Court that Greene appealed the Regional Director's decision to the Central Office, which is the final level of administrative review. He asserts that he should be excused from the requirement of exhausting his administrative remedies because of the time constraints of this case. Because Respondent does not contest that assertion, the Court will not address whether Greene was required to exhaust his administrative remedies.

placement determination was made in violation of 42 U.S.C. § 17541. Specifically, he contends that his evaluation for RRC placement should have been done twice: once under 18 U.S.C. § 3624(c), and once under 42 U.S.C. § 17541, during which time he should have received RRC placement time as an award for participating in skills programming.

Respondent filed an Answer to the petition on July 12, 2011. (ECF No. 10). Petitioner filed a Traverse (ECF No. 13), to which Respondent filed a Surreply (ECF No. 15). The issues in this case have been fully briefed and are now ripe for review.

**C.     Discussion**

Greene has no substantive right to any particular length of time in an RRC under § 3624(c). See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244-51 (3d Cir. 2005) (in exercising its discretion to make RRC placement decisions, the BOP must consider the factors set forth in §3621(b); "[h]owever, that the BOP may assign a prisoner to [an RRC] does not mean that it must."). See also Marshall v. Lansing, 839 F.2d 933, 949-50 (3d Cir. 1988) (the discretionary decision made by the Parole Commission where to place an individual within the range specified by the appropriate guideline was not reviewable). This Court may only evaluate the BOP's decision to determine if it abused its discretion by not adhering to the requirements of the applicable statutes. Woodall, 432 F.3d at 244-49 (the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations); Marshall, 839 F.2d at 942-51 (district court's authority to ensure that an agency adheres to the law does not permit it to displace the agency's decisionmaking process; the role of the court is limited to ensuring that the agency follows the law and its regulations (which have the force of law)).

8

Greene contends that the BOP abused its discretion in reaching its decision regarding the length of his RRC placement. Such allegations are rarely successful. See Bridge v. United States Parole Commission, 981 F.2d 97 (3d Cir. 1992) (the district court could review the decisions of the Parole Commission for abuse of discretion, but if the agency's decision had evidentiary support the district court could not disturb it). Review of the exhibits provided by each party to this case shows that there is some factual support for the BOP's decision. Greene's specific arguments concerning why he should receive a lengthier transfer to an RRC were considered by the BOP but found not to justify a longer amount of time in an RRC. He disagrees with the conclusion that the BOP reached, but there is no evidence that it failed to evaluate his RRC placement in accordance with the criteria set forth in § 3621(b), as required by § 3624(c). (See Resp's Ex. 2, ECF No. 10-2 at 1-9, 6/28/11 Decl. of Derrick Mebane, ¶¶ 11-15; see also Resp's Ex. 2d, ECF No. 10-2 at 20-22; Resp's Ex. 2d, ECF No. 23-25).

Greene argues that the April 11, 2011, email exchange between Warden Longley and Assistant CMC Miller demonstrates that the Warden made a unilateral decision without considering § 3621(b)'s factors when he determined that Greene would receive a 30-day RRC placement. The Court rejects this argument. The SCA does not mandate a particular method or procedure that the BOP must follow when making RRC referrals, as long as the criteria set forth at § 3621(b) are considered. Moreover, as Respondent points out, the SCA does not require prisons and Unit Teams to list every factor considered or to rehash relevant factors that had been considered in previous RRC reviews. Thus, that the Warden may have suggested the 30-day referral time after the matter with Greene's outstanding criminal charges had been resolved does not violate the applicable statutes or amount to an abuse of discretion.

Moreover, the Warden's recommendation was brought to the attention of Unit Manager Derrick Mebane, who explains:

9

>  If I, or any member of the Unit Team, felt that a 30 day RRC placement was insufficient, the Unit Team could have recommended inmate Greene for a longer RRC placement. In accordance with the practice at FCI McKean, the Unit Team's recommendation would be subject to review and approval by the Inmate Systems Manager, the Case Management Coordinator, an Associate Warden and the Warden.
>
>  In this case, after receipt of the Warden's 30 day RRC placement recommendation, neither I nor any member of inmate Greene's Unit Team believed a longer RRC placement would be appropriate, based upon any of the five § 3621(b) factors or inmate Greene's ISD or Drug Abuse Treatment Program participation.

(Resp's Ex. 3, ECF No. 15-1 at 3-4, 8/22/11 Decl. of Derrick Mebane).

Perhaps recognizing the difficulty in successfully attacking the BOP's discretionary decision, Greene also contends that, in addition to the RRC evaluation he had under 18 U.S.C. § 3624(c) (which is the subject of the above discussion), the SCA also requires that he have a separate and distinct evaluation under 42 U.S.C. § 17541 to determine if he has earned up to a 12-month RRC placement as an incentive award for his participation in various skills development programs. Because he did not have a separate and distinct evaluation under § 17541, Greene argues, the BOP violated the statute.

The Court rejects Greene's contention that the SCA requires that two separate considerations be conducted for each inmate seeking RRC placement. The RRC placement provision of 18 U.S.C. § 3624(c) expressly requires the BOP to make an individualized evaluation of each inmate against the five factors set forth at 18 U.S.C. § 3621(b). Participation in prison programming is one of many factors included in the history and characteristics of the inmate (18 U.S.C. § 3621(b)(3)). (See also Resp's Ex. 1h (6/24/10 Guidance Memorandum), ECF No. 10-1 at 40 ("assess the inmates history of successful completion of, or participation in, available programming opportunities during incarceration[.]"; id. at 41 "Longer RRC placements should be considered for inmates whose following factors are high … Demonstrated successful participation in or completion of programming opportunities[.]"). The evaluation of an inmate's participation in prison programming in this context allows BOP staff to weigh

all of the relevant factors affecting an inmate's reintegration into the community when making the RRC placement decision. As Respondent persuasively argues, it makes little sense for Unit Teams to make an RRC placement recommendation under § 3624(c), which takes all relevant factors under § 3621(b) into consideration, only to have the RRC recommendation trumped by a separate incentives award provision. Moreover, although 42 U.S.C. § 17541 suggests maximum RRC placement as an incentive, it does not require the BOP to make it an incentive. Indeed, § 17541 gives the BOP wide discretion to fashion incentives for inmates who complete inmate skills development programs.[3]

In support of his position, Greene relies upon <u>Krueger, v. Martinez</u>, 665 F.Supp.2d 477 (M.D.Pa. 2009). In that case, the petitioner challenged the recommendation that he serve the only last five to six months at an RRC. He argued, *inter alia*, that the BOP violated 42 U.S.C. § 17541 by refusing to recommend him for a 12-month RRC placement as an incentive award for his extensive participation in skills development programs. The court interpreted 42 U.S.C. § 17541 as creating an RRC placement incentive that was separate and distinct from the RRC placement procedures provided under 18 U.S.C. § 3624(c):

> …[I]t is clear to this Court that Congress intended that the BOP create incentives for a prisoner's participation in skills development program, <u>see</u> 42 U.S.C. § 17541(a)(1)(G), and that one of those incentives may be a 12-month placement in an RRC facility. <u>See id.</u> § 17541(a)(2)(A). Moreover this consideration of incentives was clearly intended to be separate and distinct from the consideration under 18 U.S.C. § 3624(c) otherwise it would have been superfluous for Congress to have created an entirely distinct statutory framework. Because it is unclear whether the BOP ever separately considered a full RRC placement as an incentive under § 17541(a)(1)(B) for [petitioner's] skills development

---

[3] Recently, the Third Circuit Court affirmed the U.S. District Court for the District of New Jersey's decision in <u>Richardson v. Director for the Bureau of Prisons</u>, No. 10-4939, 2011 WL 809869 (D.N.J. Feb. 28, 2011), in which it had denied a petitioner's mandamus action wherein the petitioner had contended, similar to Greene, that § 17541(a)(1)(G) mandated that he receive incentives for participating in skills development programs. The Third Circuit Court held: "Although the [SCA] … requires the Attorney General and the Director of the Bureau of Prisons to establish incentives for prisoner participating in skills development programs, the statute does not require that any particular incentives be given[.]" <u>Richardson v. Director for Federal Bureau of Prisons</u>, No. 11-1663, 2011 WL 2559423, *1 (3d Cir. June 29, 2011).

11

and educational achievements, the court will order Respondent to consider [petitioner], in good faith, for a full 12- month RRC placement as an incentive under § 17541 separately from its determination under 18 U.S.C. § 3624(c).

Krueger, 665 F.Supp.2d at 486.

This Court is not bound by the decision in Krueger, and respectfully finds its analysis unconvincing. The Court agrees with the U.S. District Court of the Eastern District of California in Crim v. Benov, No. 1:10-cv-1600, 2011 WL 1636867 (E.D. Ca. Apr. 29, 2011),[4] *appeal docketed* No. 11-16458 (9th Cir. June 9, 2011), which recently expressly rejected Krueger's "interpretation of § 17541 as creating a twelve month placement separate from 18 U.S.C. § 3624." Crim, No. 1:10-cv-1600, 2011 WL 1636867 at *8. In that case, the court observed:

> 18 U.S.C. 3624(c) provides that the BOP may place an inmate in RRC for a period of up to twelve months. However, § 3624(c)(4) also clarifies that nothing in § 3624 "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under § 3621." 18 U.S.C. § 3624(c)(4). 42 U.S.C. § 17541(a)(2)(A) provides that the BOP must provide incentives "for a prisoner who participates in reentry and skills development programs which may, *at the discretion of the Director*, include ... (A) the maximum allowable period in a community confinement facility...." 42 U.S.C. § 17541(a)(2)(A) (Emphasis supplied). Nothing in the plain meaning of these two provisions suggests that by enacting § 17541(a)(2)(A), Congress was attempting to create a separate twelve-month RRC placement program distinct from the one already provided in § 3624(c)(4). Indeed, such a construction of these two provisions makes no sense: If the BOP retains the statutory discretion to individually determine the duration of an inmate's RRC placement up to a maximum of twelve months, it is illogical for Congress to then require the BOP to also offer a separate twelve month RRC placement as an incentive to the inmate's completion of the skills development programs that, themselves, are to be considered as factors in making an individualized assessment regarding to the duration of the inmate's RRC placement. It is circular logic that would lead to an absurd result — i.e., that the BOP has to offer a skills development plan that will guarantee that an inmate can receive a 12–month RRC placement — and, as such, has absolutely no support in the plain meaning of the two statutes. The Court declines to adopt such a flawed construction.

Id. at *11.

---

[4] The Crim decision cited herein is the Amended Findings and Recommendation issued on April 29, 2011, by the Magistrate Judge. It was adopted in full by the District Court on May 27, 2011. See ECF No. 18 in Crim v. Benov, 1:10-cv-01600 (E.D. Ca. May 27, 2011).

12

Based on the foregoing analysis, the Court rejects Greene's contention that the BOP has abused its discretion under 18 U.S.C. § 3624(c), or has failed to properly implement the SCA because he did not receive a separate RRC review under 42 U.S.C. § 17541.

**II.**

For the forgoing reasons, the petition for a writ of habeas corpus is denied. An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 6, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERMAINE GREENE, | ) | |
|     Petitioner, | ) | Civil Action No. 11-109 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE LONGLEY, | ) | |
|     Respondent. | ) | |

## **ORDER**

AND NOW, this 6th day of September, 2011;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Courts is directed to close this case.


                                  /s/ Susan Paradise Baxter
                                  SUSAN PARADISE BAXTER
                                  United States Magistrate Judge